```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA

LORETO MARTINEZ,                )
                                )
            Plaintiff,           )
                                )
v.                              )    Case No. CIV-10-440-KEW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.           )
```

**OPINION AND ORDER**

Plaintiff Loreto Martinez (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 16, 1965 and was 44 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant worked in the past as a telemarketer, insurance clerk, counter waiter, and counter supervisor. Claimant alleges an inability to work beginning October 26, 2006 due to

limitations resulting from depression, anxiety, anti-social disorder, gender dysmorphia and/or gender dysphoria, diabetes, and diabetic neuropathy.

### Procedural History

On July 18, 2007, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On May 20, 2009, an administrative hearing was held before ALJ Eleanor Moser in Ardmore, Oklahoma.  On June 23, 2009, the ALJ issued an unfavorable decision.  On September 28, 2010, the Appeals Council denied review of the ALJ's decision.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with some limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

consider significant uncontradicted evidence supportive of Claimant's allegations of mental limitation in determining Claimant's RFC; and (2) performing a faulty credibility analysis.

**Step Five Determination**

In her decision, the ALJ found Claimant suffered from the severe impairments of depression, anxiety, anti-social disorder, gender dysmorphia and/or gender dysphoria, diabetes, and diabetic neuropathy. (Tr. 15). In her RFC determination, the ALJ found Claimant could perform light work but should not be expected to climb, balance, stoop, or crouch on more than an occasional basis, deal directly with the general public. Further, due to mild limitations in concentration, persistence, and pace, Claimant should not be expected to understand, remember, and carry out highly complex job instructions, although he was capable of understanding, remembering, and carrying out the instructions of unskilled work and the slightly more detailed instructions of low-end semi-skilled work. (Tr. 18). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the jobs of record clerk, check processing clerk, and data entry clerk. (Tr. 21).

On January 26, 2009, Claimant was evaluated by his psychological counselor, Andrean Pittman. Ms. Pittman found

5

Claimant had been diagnosed with Major Depressive Disorder and Gender Identity Disorder.  She states Claimant meets the criteria for Gender Identity Disorder by a stated desire to be the other sex, frequent passing as the other sex, desire to live or be treated as the other sex, and the conviction that he has the typical feelings and reactions of the other sex.  Ms. Pittman states that Claimant meets the criteria for Major Depressive Disorder by experiencing depressed mood most of the day, nearly every day, markedly diminished interest or pleasure in all, or almost all, activities most of the day, nearly every day, significant weight loss when not dieting or weight gain, diminished ability to think or concentrate or indecisiveness, nearly every day, and feelings of worthlessness or excessive or inappropriate guilt nearly every day.  (Tr. 434).

Claimant told Ms. Pittman that he could not hold a job due to these conditions.  His inability to interact with others appropriately and to focus and concentrate, inability to interact with co-workers and the general public affect his ability to maintain employment.  Id.

Ms. Pittman also completed a Mental Residual Functional Capacity Assessment form on Claimant dated January 23, 2009.  She determined Claimant was markedly limited in every functional

category on the form. (Tr. 435-37).

On September 22, 2007, Claimant underwent a mental status examination by Dr. Patrick Turnock. Dr. Turnock found Claimant to be logical and goal directed in his thinking with no evidence of psychotic process, he admitted angry thoughts, and no hallucinations. He stated his depression was a 6 on a 10 point scale, his level of irritability at a 6, his level of nervousness or restlessness at a 5, and his level of physical pain at a 10 due to uncontrolled diabetes. Dr. Turnock found Claimant to have high/average IQ. (Tr. 233). Dr. Turnock diagnosed Claimant with Dysthymic Disorder, Gender Disorder, and Personality Disorder, NOS. He recommended long-term psychotherapy and referral to a psychiatrist. Claimant displayed personality traits in a pattern of behavior which caused him difficulty in maintaining employment but that he was nonetheless quite successful in finding employment. Dr. Turnock concludes Claimant appears capable of working in gainful employment at the same time that he pursues his mental health treatment options. (Tr. 234).

On December 7, 2007, a state agency examiner completed a Mental Residual Functional Capacity Assessment form on Claimant. He determined Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, the

7

ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 247-48).

A Psychiatric Review Technique from October 26, 2006 finds Claimant with depression and dysthymic disorder. The report only shows moderate limitation in the area of maintaining social function. (Tr. 251-62). In the narrative statement, the examiner found Claimant was on medication for depression and under treatment. He showed good hygiene, logical and goal directed thinking, angry thoughts, no hallucinations, frustrated mood, oriented x3, memory intact, judgment intact, and diagnosed with dysthymic disorder and gender dysmorphia. (Tr. 263).

Clearly, Ms. Pittman, as a licensed professional counselor, constitutes an acceptable medical source, 20 C.F.R. §§ 404.1513(a)(1-5), 416.913(a)(1-5), or a treating source, 20 C.F.R. §§ 404.1502, 416.902. Although Ms. Pittman's assessment would be considered other medical evidence that could be used to show the severity of Claimant's impairments, 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1), the ALJ had no obligation to give these assessments the same weight as a "medical opinion," 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical opinions as statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments).

8

Further, the statements within the counselors' assessment reflecting the opinion that Claimant could not work invade a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ expressly stated that the reason for accepting the opinions of treating, examining and non-examining doctors over those of the counselor was their qualifications as a medical source. Moreover, the ALJ recognized that the marked limitation in all functional activities found by Ms. Pittman was not supported in any of the other evidence in the record. The ALJ further found nothing in the record to suggest the extreme limitations found by Ms. Pittman would last 12 continuous months. (Tr. 17). As such, the impairment would not be an impediment to substantial gainful work. Barnhart v. Walton, 535 U.S. 212, 219 (2002). Contrary to Claimant's assertion, the ALJ adequately considered Ms. Pittman's opinion and documented the bases for discounting it in formulating Claimant's RFC.

### Credibility Determination

Claimant asserts the ALJ did not perform a proper credibility analysis. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility

determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In his decision, the ALJ sufficiently linked the medical evidence to the findings on credibility. In particular, the ALJ identified significant contradictions between the medical findings and Claimant's assertions of impairment. "[A] formalistic factor-by-factor recitation of the evidence" is not required to support

the necessary analysis.  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's discussion and the references to the objective record contained in it, considered in toto, is sufficient to support the credibility findings of the ALJ.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 29th day of March, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

11